Thank you. Good afternoon. This is case number 4140526. This is case number 4140526. For the appellate, we have Warner Brockett, for the applicable, we have David Robinson. Mr. Brock, please proceed. May I please support your counsel? Our name is Warner Brockett on behalf of the Washington State Appellate Defender. I am pleased to represent Mr. Todd Howell. Your Honor, on April 12, 2013, Mr. Howell entered into a fully negotiated plea agreement under which he pled guilty to a felony death and a driving while license revolt. Now the driving while license revolt was enhanced into a class 4 felony because the state alleged that Mr. Howell had committed three or more prior violations. Now initially these two cases were brought under two unrelated case numbers, but as I mentioned they were resolved under this single agreement. Mr. Howell pled guilty to both offenses and in exchange he received two four-year sentences to run consecutively. The state also agreed to dismiss four cases that were pending against Mr. Howell at the time. Well, a little less than a year later, on February 21, 2014, Mr. Howell filed the petition under section 2-1401 challenging the validity of his EWLR conviction. The basis for Mr. Howell's challenge was that the EWLR was improperly charged because the state failed to establish that he had three or more prior convictions to potentially make him eligible for that class 4 felony enhancement. Well then the trial court held a hearing on Mr. Howell's petition on May 12, 2014. At that hearing, Mr. Howell expressed that he had a legitimate complaint in the sense that this was unjust for him to be eligible for class 4 when he did not have three or more prior convictions. What Mr. Howell asked for was what I would say is an impermissible remedy. Essentially, Mr. Howell just asked the court to reduce his driving on license revolt from a class 4 felony to a class A misdemeanor, yet he wanted the court to keep the rest of the terms of his plea agreement intact. Well, the court, recognizing that the EWLR was improperly charged, the court went ahead and vacated the entire conviction. The court also went a step further. The court also vacated Mr. Howell's entire plea agreement, and the court went a step further again. The court also ordered the four dismissed cases that were dismissed under that agreement, the court ordered those cases reinstated, and the court also granted the state unrequested leave to amend its EWLR charge. Also, the court, because it said that Mr. Howell did not take action to address this death conviction, the court also sent Mr. Howell back to the Department of Corrections and ordered him to continue serving out the remainder of that conviction. Now, Your Honor, is Mr. Howell's position that what the court did there was, it just wasn't proper? Isn't what the court did put everyone back where they were before the plea agreement? Essentially, but at the same time, the court also just reinstated the dismissed cases in order to... Right, because wasn't it part of the plea agreement that you enter a plea to these two cases will be dismissed, that's the agreement, and so if any part of that agreement is now going to be changed, isn't the state entitled to have those charges reinstated that were dismissed? Yes, but the problem was that the court addressed this petition as if it was a motion to withdraw, where within 30 days the court can decide whether or not the plea agreement is valid and at that point the charges would be reinstated, but here these charges were dismissed well outside the 30 day window, so the only way the charges could have been reinstated was that the state had to decide whether or not it wanted to do that by either refiling the charging information, I mean it wouldn't have been very troublesome for the state to just do it itself. Well didn't the prosecutor mention the fact that the charges would have to be reinstated if the court did what your client was asking it to do? Right. Didn't the state mention that during the proceedings? I mean are we in a situation where basically for whatever reason the court did what your client wanted and now your client realizes that he shouldn't have asked for what he asked for and now wants another bite at the apple and saying I want to basically renege on the deal, I didn't realize what I was asking for would have this effect, and so fix it for me now. Well he asked the court to essentially keep his whole entire agreement intact, he just wanted his PWR reduced. How is that keeping it intact? Well it's not, and that's why I can see there's probably an impermissible remedy that he was asking for, but my position is what the court did was equally impermissible. The court simply vacated the entire agreement including his death conviction and just ordered the parties back to square one. But didn't your client, didn't they have this little conversation right before he was about to be taken back or taken out of the courtroom about that second case and the judge mentioned the fact that you didn't ask for any relief on that case and explained to him what he would need to do if he wanted to seek relief on that, I mean I kind of feel like in your case the defendant basically asked for one thing and then the court did all these things sua sponte where there was conversation between your client and the court and the prosecutor was speaking and basically your client didn't want to do anything on the theft case. Right, he didn't want that conviction to be touched. Right, but you're saying that the judge sent him back on that, I mean that was at his request as well, he made clear he didn't want the judge to do anything on that, right? True, but he also didn't want the judge to blow up his plea agreement and that's what the judge did. So that's where we, that's where there's a bit, you know, there's wrongs on both sides essentially. Like I said, what he was asking for was probably in permissible and of course it was in permissible. They should have just vacated everything and the court should have at least admonished him from the beginning that hey look what you're asking for is, I can't give that to you. Wasn't there a conversation along those lines? I mean when the prosecutor was saying everything would have to be reinstated, I mean this gentleman, he was given the opportunity to speak in court, this was not a situation where he was shut down and couldn't express what he wanted or didn't want. I think that conversation took place. There was a conversation on the record, but essentially what he said was that, essentially what he said was that if he couldn't get his DU, if he wanted his DUR just reduced to a Class A misdemeanor, but the rest of the actions that the court took were just something that was just completely impermissible. I mean I've never found a case where the court took it upon itself to just step into the roles of parties and decide how they wanted to proceed with a valid agreement. Mr. Brockett, I'm trying to figure out why the court granted any relief. Are you claiming that the DWLR conviction was void? It was a voidable conviction. It was voidable? Yes. But not void? Not void. Well, how can you address that in a 2-1401 petition? Well, Mr. Howell, since he alleged new facts, he introduced his driving ass rack, which shows that he did not have... But he would have known that, or should have known that, when he entered into the plea. And I don't think he could get past the due diligence that would be required. So I am having a hard time understanding why the trial court granted any relief whatsoever. It just simply said, we're stuck with this. But didn't your client allege that it was void? That was the position he took. Yeah, but he was a pro se. I understand, but I just want to be clear with respect to Justice Turner's question. Well, claiming it was void certainly got it in front of the trial court. But if it's not void, I don't believe you can raise it in a collateral proceeding. Well, he can raise it if he's able to establish the three-prong test for bringing the claims on the 2-1401. I mean, he brought it promptly to the court's attention once he discovered that this was wrong. And it was wrong. It was just an injustice. And I guess he chose probably maybe not the most wise route. But he did what he had to do to get it in front of the court. And the court obviously recognized that, hey, look, this is a bad conviction. The court took action on it and decided to vacate it. Did he have the two priors, which would have made him Class IV? But that's not how the state charged him. No, I realize that. But I'm just asking, is that correct, that he had the two priors? I didn't take a – I can't remember, recall right now. Okay, that's fine. That's fine. Thank you. I just know that – I mean, the court clearly agreed that there was something wrong. And the court even said in its ruling that there was a substantial factual question as to whether or not he had the two more convictions, the three or more convictions. So, I mean, I agree that he did not ask for the court to address the death conviction. But at the same time, the death was a part of that entire negotiated plea agreement. So the court could not just partial out which agreement it wanted to deal with without realizing the implication on the other agreement. Because they were both together. They were inseparable. I mean, the same thing took place in the First District case. People v. Slaybaugh. Something – facts here was substantially similar in that case. The defendant pled guilty to aggravated DUI and intimidation charge, but he received the improper sentence for his DUI. He received a court-ordered sentence, and that wasn't appropriate. Well, then he filed a 214-1 petition to challenge the validity of that sentence. And on appeal, the state argued, the state conceded that the sentence was improper and that they just wanted the entire – they wanted the court to just vacate that part of the agreement but keep the entire agreement intact. Well, the court said no. It said it was impossible because these are inseparable agreements. And if one of the central components of the agreement is found to be invalid, then that renders the entire agreement invalid. I mean, that's what happened here. Except, I mean, that's virtually – the entire agreement was basically tossed out, except for your client's insistence that he didn't want to do anything on the theft case. I mean, this is a mess. I agree. It's a mess. But isn't it a mess that was created by your client? I'll say initially it is a mess. Initially it was something that was created by Mr. Powell, but it was acerbated by the trial court's actions. And so I just think the only thing we can do here is just send this back and just have the party start up at square one. It will be possible to be exactly at square one because Mr. Powell already served out his time for the theft, but at the same time they can work out some type of other way around it. I mean, that's the only thing we can do here because there's not really anything else that we can at this point give Mr. Powell. But we just need to recognize that what the court did was equally wrong, and the party just needs to start at square one. With that, Mr. Howell, respectfully ask this court to just make it part of the ruling that reinstated his four dismissed cases and let the party just renegotiate whatever plea agreement they want to come up with. Thank you. Thank you, Mr. Brockett. You will have rebuttal if you so choose. Mr. Robinson. Please report, Mr. Brockett. I'm here today, David Robinson, on behalf of the state. Perry Miller prepared the briefs in this case, and she has since retired. Once I got this case several weeks ago, I figured out why she did. One of the things that I try to do whenever I get a case is try to put myself in the shoes of the appellate court and try to determine, particularly in a case like this where it's problematic and there was some invited error by a defendant, and there was some, I think the best way to define it is that Judge Klim had a bad hair day. And I try to decide what I would do if I were on the appellate court. And I'd like to start by just addressing two things. One is the jurisdiction, and then I'll move to the merits. Then I'll walk through that as I would if I was laying it out in a disposition, for example. So on the issue of jurisdiction under 304B3, as to the May 12, 2014 order vacating the plea and reinstating previous causes from which the defendant appeals in the first case, 414-0526, the state has no problem with jurisdiction under 304B3. We have no objection to that. As outlined in our brief, we do object to jurisdiction on the October 30, 2014 order. The court never characterized that as a 214-01 petition. I think that's required under Supreme Court precedent. No one discussed that as a 214-01 petition, so jurisdiction under 304B3 would not be proper from the state's perspective. Is it possible the court construed it as a 14-01 petition? It could be, Your Honor, and I don't think it would be a reversible error for this court to conclude that. However, no one ever mentioned that. The court never construed it that way. He never cited 214-01. And the idea that just because the substance of the motion could be construed as a 14-01 on appeal, I think in a case like this where we already have enough problems, might create more issues than are necessary. But don't we look to the substance of the motion versus the title? We do, but we do primarily at the trial court, Your Honor. That's an issue for the trial judge. And again, this is not just protecting the state's position. This protects defendants' positions in collateral attacks. Anytime you construe something as a post-conviction or 214-01 petition, defendants have certain rights on those initial petitions, and their standard becomes higher on subsequent petitions. So I'm always hesitant in a case to push that for purposes of justice when it's unnecessary. How would that be so with a 14-01? You're talking about the diligence issue? I don't understand post-conviction certainly, but I don't understand on the 14-01. Well, because you have issues of res judicata, you potentially have issues of things being affirmatively waived when a defendant pro se is trying to argue certain issues. And again, the state would, you know, if ultimately this court determines that it has jurisdiction on that basis, the state certainly isn't going to take a PLA from that. But I just wanted to point out, I don't think it's necessary to get here because under the 414-0526, I think the issues as I lay them out in the merits as far as the state's position is, I think you could probably address it under that case number alone. What about the question of whether it's a void versus voidable or ordered? That's an excellent point, and this is something that Justice Turner actually addressed in a case called People v. Gregory. 2010, I believe it was. And this is what Justice Turner wrote. A void judgment is, one, entered by a court, one, without jurisdiction, or two, that exceeded its jurisdiction by entering an order beyond its inherent power. We note improper admonishments themselves do not, even improper admonishments themselves do not render a defendant's conviction or sentence void. I've never seen a case where it doesn't mean it doesn't exist. I've never seen a case where a trial judge looked at a charging instrument in the plea context and said because a charging instrument was somehow defective despite all the admonishments that a defendant later gets before pleading guilty, vacates a judgment. That's problematic. This was actually one of those situations that was so odd. This is why I said it was sort of a bad hair day for Judge Klim, I think. It was so odd that I thought maybe, oh, maybe I'm wrong about that. He seemed so emphatic about this below that I had to do some research to make sure that I wasn't wrong about my initial instinct. And it turns out, as Justice Turner pointed out in Gregory, and of course the Supreme Court has said the same thing in People v. Hughes in the plea context. What about Castleberry in terms of the time frame involved here? What was the date of the Gregory decision? I'm not sure. I think it was 2010. I can get back to you about that, Your Honor. I'm sorry I don't have it right in front of me, but I don't think that matters. And here's why. This is not a state's appeal. And this is going to go into why I said what I said at the beginning, which is I tried to approach this as if I was in your place and what I would do if I was on the appellate court. Here, I'm not sure I would get there, and if Your Honor would indulge me, I'd like to go through what I think should be done here, and then if you have a question about that, we can follow up on it. So the pleas in this case were, I'll just refer to them because they're both 12 CF cases. 673 is the theft case, and 887 is the DWLR case, and that was the one that was vacated. So 887 was vacated, 673 was the theft that was left in place, and he was sent back to DOCR. They were both fully negotiated and inextricably intertwined. I didn't make up that phrase. That's what we argued below. So I did not feel comfortable in our briefing, and certainly not here today, representing to this court that somehow we would make some argument that these things should be severed. We argued from the jump that these were inextricably intertwined, and frankly, I think the State Attorney's Office was exactly right on this case from the beginning, and I think Judge Clem erred. Now the question is, where do we go from there? To put it another way, the dismissal of the remaining counts were elements of both plea agreements. We argued that from the beginning. The State Attorney's Office, our file shows that this was all part and parcel of all these charges. This was all one plea agreement. But what this trial court ultimately did was improper as a matter of law, as we've discussed. I just don't think the court could do what it did. But it was precisely, as Justice Holderwhite points out, what the defendant asked for. There were a number of colloquies between the defendant personally and the trial judge. Judge Clem saying, hey, look, you asked for this. I'm giving it to you. The problem was really what he was asking for was to have his cake and eat it too, and that's why it should have been balanced right away. I think that's a legal technical term. But the problem was he was asking to have that reduced. And even under cases like Whitfield, the Supreme Court has repeatedly said, look, we review these plea agreements like contracts, but it's even more than that because there's liberty interests at stake. And so we go even beyond regular contract principles. And I think, you know, drawing on that language from Whitfield, this is exactly the type of thing we've got in this case. There is no way that the court in any shape, form, or fashion could reduce that sentence to a misdemeanor, even if there are problems. It was incumbent upon the defendant to say, hey, look, this is a due process problem or some grave injustice that I was convicted under these charges. No claim in that regard was ever made. What the defendant ultimately did was, in part, he got what he wanted, and then the judge gave him even more. In other words, he said, hey, but on this charge, you get back everything. And I think the defendant's representation in his brief that the court reinstated the previous charges is inaccurate, and I don't think it was inaccurate in a sinister way by any means. I just think it was just inaccurate in the verbiage used by counsel. The court did not reinstate those charges. The court was just explaining to the defendant, hey, look, if I give you this back in this DWLR, just know that all this is going to be back on the table and they can recharge you. Now, theoretically, as sort of a legal theoretical principle, that's all true. But I actually think as a matter of law, it's incorrect in this case because it was all one plea. So if he was going to jettison the entire plea, that is, if for some reason the judge found it involuntary or unknowing, then the judge would have had to vacate both the theft and DWLR, and that's the point that the state was making below. So again, from my perspective, I think this court can do one of two things. One is just affirm and say, look, the defendant got what he asked for, although in full candor to this court, I'm not sure that's the way this court should go respectfully, only because I don't think he did really get what he asked for. I think Judge Klim was wrong about that. He was asking for something even more clever, which was just to have it reduced, and Judge Klim gave him more. Alternatively, this court could remand to permit the defendant to get his entire plea back, although I think defense counsel has to have a lengthy discussion with him at that time about what that means, particularly since at that time he was proceeding pro se. Someone needs to explain to him, if you get what you want here, here's what you get, a trial on all these charges. And this leads me to one of the notes I wanted to make, which was that the relief requested by defendant on appeal is not available relief. I'm aware of no Supreme Court rule or statute. Frankly, I think there's a constitutional provision against it based on separation of powers to remand a case and order the state to renegotiate a plea. There are some cases that kind of use that language, but essentially what those cases are saying on close review is, you could send it back so that they have the option of negotiating. So that if you do send this back to have Judge Klim clean up the record here and allow him to file what he wants to file and get this back on track for the defendant, the state would not be opposed to that, just because I never feel comfortable, and I know the state's attorney in Champaign County does not feel comfortable with someone serving time on a sentence or having something on a record that's not legally permissible, even if he asks for it, Your Honor. If there are no questions. Why can't this court say that this order, this DWLR order, is not void, and that defendant cannot show due diligence in presenting his defense to the circuit court? Or he has to know his own record, and therefore no relief at all should have been granted by the trial court? To paraphrase Justice McCullough, this court can do whatever it wants. Isn't that the right thing to do if we're following the law precisely? It is, Your Honor. However, my fear would be that the defendant would take a PLA,  that would be my concern about that. I think this court can do it. I don't know ultimately if that's what the Supreme Court would say, but that's my fear. And frankly, that's why I'm not advocating that position. I totally agree with it, Your Honor, but I'm not advocating that because that was not the state's position. All right. Thank you, Mr. Robinson. Mr. Brockett, do you have any rebuttal? Well, first I would like to point out that the state has waived any issue it had in terms of Castleberry. It never mentioned Castleberry in its brief, and it also never mentioned Peabody Gregory in its brief. But even so, as we were discussing, I don't believe Castleberry has any impact on this case, at least in terms of this was a void conviction, whereas Castleberry dealt with the void sentence. But this was a voidable conviction, not a void conviction. Second, what the court did was it realized that Mr. Howell's DWLR conviction was just wrong, which whichever route that Mr. Howell wanted the court to take, the court acknowledged that the conviction was wrong and that it rightfully needed to be vacated. And after that, the proper remedy at that point was just to completely throw out the entire plea agreement. We understand that Mr. Howell did not ask for the court to address the death conviction, but he also didn't ask the court to blow up his whole entire plea agreement. What Mr. Howell asked for was impermissible, but what the court did was also equally impermissible. I mean, Mr. Howell made it clear at his hearing that he was not asking for the court to vacate his plea agreement. He only was asking for the court to reduce it from a Class 4 to a Class 8 misdemeanor. At that point, the court should have admonished Mr. Howell that that is an impermissible remedy and we can't do that. You have only one option. Either you keep your entire plea agreement, including the bad conviction, or I'm going to vacate the whole entire thing. And the court did not give Mr. Howell that option because he just never informed him of that. So, I mean, the invited error applies only in those situations where the defendant specifically asks the court to proceed in one manner and then challenges that manner as inappropriate. But here, Mr. Howell didn't ask the court to proceed because he didn't want the court to blow up his plea agreement. The court did that on its own. So with that, and also the language that the state says that the court didn't automatically reinstate those charges, well, that's not true. That's not the language the court used at the hearing. The court said the charges, the information for each dismissed charge was reinstated, and he also directed the state to set those matters for a jury call the following week. And that's what the state did. If you look at the docket entries, the state, at a May 27th hearing, the state moved to set, I believe it was, three of the four charges for jury call on July 7th. That's exactly what the state did. So Mr. Robinson is, I don't want to say wrong, but he basically misrepresented exactly what happened at the hearing because the court said that the information was just reinstated. So if there's no other questions, I'll rest. I see none. Thanks to both of you. The case is submitted. The court stands recessed until the next case.